The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* METRO-GOLDWYN-MAYER CORP. (No. 3424)[1]

[1] T. D. 45247.

120

United States Court of Customs and Patent Appeals, November 2, 1931

*Charles D. Lawrence,* Assistant Attorney General (*Ralph Folks* and *Hugo P. Geisler* of counsel), for the United States.

*Puckhafer, Rode & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 14, 1931, by Mr. Folks and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee is engaged in the production of motion pictures. It imported in 1925, at the port of Los Angeles, Calif., two shipments of motion-picture film. In the entry made April 7, and which is known in this record under the protest number 216,096, 114,678 feet of exposed and developed film negative, exposed and developed in Italy, were entered. In the other entry made April 21, and known herein under the protest number 204,878, 304,754 feet of negative, also exposed and developed in Italy, were entered

In both entries the collector returned the merchandise for duty under paragraph 1453 of the Tariff Act of 1922. In the first-named entry 110,436 feet were returned for duty at 3 cents per linear foot and 4,242 feet at 1 cent per linear foot. In the second entry 300,113 linear feet were returned for duty at 3 cents per foot and 4,641 feet at 1 cent per foot.

The importer protested in both cases, claiming the goods to be dutiable under said paragraph at—

1 cent per foot, 2 cents per foot, 3 cents per foot, as per affidavits, statements, and the examination of the merchandise warrants.

Said paragraph 1453 is as follows:

PAR. 1453. Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem; photographic dry plates, not specially provided for,

15 per centum ad valorem; photographic and moving-picture films, sensitized but not exposed or developed, four-tenths of 1 cent per linear foot of the standard width of one and three-eighths inches, and all other widths shall pay duty in equal proportion thereto; photographic-film negatives, imported in any form, for use in any way in connection with moving-picture exhibits, or for making or reproducing pictures for such exhibits, exposed but not developed, 2 cents per linear foot; exposed and developed, 3 cents per linear foot; photographic-film positives, imported in any form, for use in any way in connection with moving-picture exhibits, including herein all moving, motion, motophotography, or cinematography film pictures, prints, positives, or duplicates of every kind and nature, and of whatever substance made, 1 cent per linear foot: *Provided*, That upon the importation of photographic and motion-picture films or film negatives taken from the United States and exposed in a foreign country by an American producer of motion pictures operating temporarily in said foreign country in the course of production of a picture 60 per centum or more of which is made in the United States the duty shall be 1 cent per linear foot, and the Secretary of the Treasury shall prescribe such rules and regulations as may be necessary for the entry of such films or film negatives under this proviso: *Provided further*, That all photographic films imported under this Act shall be subject to such censorship as may be imposed by the Secretary of the Treasury.

Under and by virtue of the power given by the first *proviso* of said paragraph, the Secretary of the Treasury duly prescribed rules and regulations for the entry of photographic and motion-picture films, or film negatives, under said paragraph and *proviso*. Said regulations are T. D. 39917, 44 Treas. Dec. 366, and T. D. 39984, 45 Treas. Dec. 89, the latter being an amendment of the first.

The said regulations, as amended, provide for the making of affidavits at the time of entry of any of such photographic and motion-picture films, or film negatives, and prescribe the form thereof. The form of one of said affidavits is as follows:

I _____ do solemnly, sincerely, and truly swear (or affirm) that the _____ feet of motion-picture films imported by me ex. S. S. _____ on _____ were used in connection with the production of the picture entitled _____ .

I further declare that the number of feet of film in the completed picture _____ of which _____ feet are represented by the _____ feet of films exposed in (country) _____ and imported ex S. S. _____ on _____ .

In both of the entries made by the importer herein, affidavits were filed as provided by said amended regulations and are attached to the respective entries in the case.

On the hearing in the court below, the following colloquy occurred:

Mr. Huber. These protests cover moving-picture film which was assessed at 3 cents per foot under paragraph 1453. We claim it is properly dutiable at 1 cent a foot under the provision in paragraph 1453 which reads—

upon the importation of photographic and motion-picture films or film negatives taken from the United States and exposed in a foreign country by an American producer of motion pictures operating temporarily in said foreign country in the course of production of a picture 60 per centum or more of which is made in the United States.

The affidavit that has been drawn and accepted herein by the collector states that this film was used in the production of the picture, "Ben Hur," and it also——

Mr. LAWRENCE. If your honor please, in view of the information disclosed by the papers in these protests and after interviewing the appraiser at this port, I am willing to stipulate that 60 per cent or more of the film shown and run in the picture entitled "Ben Hur" was produced in the United States.

Mr. HUBER. That is agreed to.

Judge SULLIVAN. Cause submitted on stipulation.

Thereupon the United States Customs Court held all of the film dutiable at 1 cent per foot. The Government filed an application for rehearing based upon the alleged fact that the record does not contain sufficient information to justify the judgment in the court below; that—

the importer has failed to show what amount of film was imported and what amount of film, as imported, was shown and run in the picture entitled "Ben Hur," also what part "of the film shown and run in the picture entitled 'Ben Hur'" was not *exposed and developed* in the foreign country.

The rehearing was denied, and the Government has brought the case here on appeal. It is contended here that there are no facts before this court sufficient to sustain said judgment; that the Government's only stipulation was that 60 per centum or more of the film "Ben Hur" was produced in the United States; that there is no information in the record as to how much of the picture, as it was finally prepared ready for exhibition, was made in the United States; and that there is no showing as to what the balance of the film exposed and developed in foreign countries was used for, the argument being made that it might have been used in the making of other pictures, so far as the record discloses. It is also contended by the Government that the court below had no right to consider the affidavits attached to the entries as evidence to establish any facts, and that this court is also likewise limited.

The last contention is doubtless sustained by the weight of authority in this court. We have held repeatedly that such affidavits, in the absence of a stipulation to submit on the record, do not possess evidentiary value on the trial of the case. *Cintes* v. *United States,* 18 C. C. P. A. (Customs) 361, T. D. 44614; *United States* v. *Holt & Co.,* 17 C. C. P. A. (Customs) 385, T. D. 43822; *Eidlitz & Son* v. *United States,* 12 Ct. Cust. Appls. 56, T. D. 39998; *Borgfeldt & Co.* v. *United States,* 11 Ct. Cust. Appls. 421, T. D. 39433. It is therefore obvious that the affidavits in question may not be considered in support of the importer's position, nor can they supplement the stipulation which was made on the trial.

The Government concedes that there were 419,432 feet of exposed and developed film imported by these entries, and that 8,883 feet thereof were used in the film "Ben Hur." It is contended by the Government that under the language of paragraph 1453, film which

has been *exposed and developed* in a foreign country is all dutiable at 3 cents per linear foot, and that only such film as has been *exposed* and not developed in a foreign country is dutiable at the 1-cent rate.

Said paragraph 1453 provides a rate upon photographic-film negatives imported for use in connection with moving-picture exhibits, or for making or reproducing pictures for such exhibits, when they are exposed but not developed, of 2 cents per linear foot; when exposed and developed, of 3 cents per linear foot. Upon photographic-film positives it provides a rate of 1 cent per linear foot. The first *proviso* is evidently intended to favor the production of moving pictures which, when ready for exhibition, are at least 60 per centum of domestic or United States production, and which, at the same time, may contain film which has been exposed and developed or exposed in foreign countries. The object of the statute is quite obvious. It provides, in brief, that an American producer of motion pictures may operate temporarily in a foreign country in the course of production of a picture, and may take photographic and motion-picture films or film negatives out of the United States for that purpose; that he may expose these films in said foreign country and bring them back into the United States, if said films or film negatives are exposed in the course of production of a picture, 60 per centum or more of which is made in the United States, at a low rate of duty.

The Government argues that the word "exposed," as used in this *proviso*, must be held to be of limited meaning, and that if something more has been done to a film or film negative than a mere exposure, then such film or film negative is not entitled to the 1-cent rate. It is said that inasmuch as the Congress has recognized the distinction between film exposed and film exposed and developed by differing rates in the preceding part of the paragraph, in this *proviso*, having mentioned "exposed" only, the privilege of the 1-cent rate extends only to films which had been exposed only.

In attempting to construe the somewhat ambiguous language of this *proviso*, we have examined the bill (H. R. 7456) in its various stages, the reports of the committees of the House and Senate having it in charge, the hearings of said committees, and the various summaries of tariff information furnished by the United States Tariff Commission to said committees. No light, however, is thrown upon the matters of inquiry here, and it becomes the duty of the court to so construe said *proviso*, if possible, as to effectuate the apparent purpose of the paragraph.

We are not unmindful of the force of the argument used by Government counsel in this respect. However, it may be as well argued that, as it appears from the preceding portion of paragraph 1453, a distinction is made therein between the films and film negatives exposed and those which have been exposed and developed, and

whereas in the *proviso* no such distinction is made, no such distinction was by the *proviso* intended.

The evident purpose of the statute would plainly be more advanced by a liberal construction of this *proviso*, and we are of opinion that if a film or film negative taken from the United States and brought back under this *proviso* has been exposed in a foreign country, this is sufficient to bring it within the *proviso*, even though, in addition, it may have been also developed.

To hold otherwise would be to entail upon American producers making parts of their pictures in foreign countries the great expense necessarily entailed by such making, without affording to them the opportunity, by the development of their films, to ascertain whether the films were spoiled or defective, or whether certain scenes must be retaken. If the construction argued by the Government is correct, all such films must be exposed and then brought back to the United States before being developed, to be entitled to the favorable rate fixed by this *proviso*.

The court will take judicial notice of the methods used in the production of moving pictures at the present time. In order to give this statute a reasonable meaning we hold that a film or film negative may be exported and reimported under this *proviso*, if it has been exposed in a foreign country in the course of production of a picture, 60 per centum or more of which is made in the United States, whether it has been developed or not.

Counsel for the Government has alluded, in the oral argument, to the use of the words "60 per centum or more of which is *made*" (italics ours), as they appear in the *proviso*, and it will not be inappropriate for the court to state its construction of the meaning of the word "made" as used in this connection. Plainly this word is not intended to apply to the mere fabrication of the picture which is finally produced, nor to the mechanical cutting or manipulation of the same; nor does it mean that at least 60 per centum of the physical labor utilized in the making of the film shall be the test. It seems a reasonable construction of the word "made" to hold that it shall be applicable to any film or film negative which has been exposed in the United States, and which is finally utilized in the picture which is produced and exhibited. A picture as exhibited, 60 per centum of the film of which was exposed in the United States, is a picture, in our opinion, 60 per centum or more of which was made in the United States.

If the importer was an American producer of motion-pictures, operating temporarily in a foreign country in the course of production of a moving-picture, and if he had taken 419,432 feet of motion-picture films from the United States and had exposed the same in said foreign country, and had then reimported the said exposed film in

compliance with the regulations of the Secretary of the Treasury, duly promulgated, and if said film was used in the production of a picture, 60 per centum or more of which was made in the United States, then the importer was entitled to a 1-cent rate upon the whole of said exposed film.

It is quite evident that both parties to this litigation were misled by the stipulation hereinbefore referred to. Counsel for the Government were of the opinion, as stated in their application for a rehearing, that the stipulation was to be considered only as a part of the proofs in the case. On the other hand counsel for the importer seem to have been laboring under the impression that the affidavits, supplemented by the stipulation, established importer's case and brought it within the statute. It is very evident, from a consideration of the record and the entry papers, together with the attached papers, that the case was not tried or heard below on its merits. It is also equally apparent that justice to both the importer and the Government requires that the case be resubmitted to the court below, with an opportunity to the parties to offer such evidence as may lead to a correct conclusion on the merits of the controversy.

The judgment of the court below is *reversed*, and the cause is *remanded* for a new trial.